THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **CLAIRE STEELE**<br>**A/K/A BRANDON DE LA CRUZ**<br><br>Plaintiff,<br><br>v.<br><br>**NATIONAL HEATH CARE FOR THE**<br>**HOMELESS COUNCIL, INC.**<br><br>Defendant. | Case No. |

## COMPLAINT

Plaintiff Claire Steele ("Plaintiff") files this lawsuit against National Healthcare for the Homeless Council for discrimination and retaliation in violations of Title VII and the Americans with Disabilities Act.

**I.    Parties**

1. Claire Steele, also known as Brandon de la Cruz, is a citizen of the United States, and a resident of the State of Tennessee and is over nineteen (19) years of age.

2. National Health Care for the Homeless Council, Inc. ("NHCHC") is an entity subject to suit under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," 42 U.S.C. § 2000e et seq., as amended by the "Civil Rights Act of 1991," and 42 U.S.C. § 1981a.

3. National Health Care for the Homeless, Inc. is a Tennessee corporation located in Nashville, TN.

1

Plaintiff's First Set of Interrogatories

## II. Jurisdiction and Venue

4. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 1343(4), 2201 and 2202. This is a suit authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," 42 U.S.C. Section 2000e et seq., as amended by the Civil Rights Act of 1991, and 42 U.S.C. Section 1981a.

5. The plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended by the "Civil Rights Act of 1991," 42 U.S.C. § 2000e et seq. The plaintiff timely filed her charge of discrimination within 180 days of the occurrence of the last discriminatory act. The plaintiff timely filed her lawsuit within 90 days of the receipt of her right-to-sue letter from the EEOC.

## III. Facts

6. Plaintiff is a transgender woman.

7. NHCHC is a non-profit organization that claims to work to improve homeless health care through training and technical assistance, researching and sharing best practices, advocating for real solutions to end homelessness, and uplifting voices of people experiencing homelessness.

8. Plaintiff was hired by NHCHC as a Technical Education Coordinator on February 5, 2020.

9. Plaintiff was promoted to Media and Technology Manager in July of 2020.

10. Plaintiff continued in that role until her wrongful termination on October 18, 2022.

11. From July 2020 through May 2022, Plaintiff reported to two separate managers depending on the work she was performing.

12. Dott Freeman oversaw Plaintiff's work when she was performing duties for the Advancement office.

13. Melanie Harper ("Harper") oversaw Plaintiff's Administrative work including internal IT and when she was working with an external IT group.

14. Plaintiff also regularly performed internal IT work.

## Freeman Discrimination

15. When working with Dott Freeman ("Freeman"), Plaintiff witnessed her on several occasions acting in an abusive and hostile manner.

16. In December 2020, Freeman was abusive towards a receptionist for a third-party company for which Plaintiff was the contact person.

17. Plaintiff reported this incident to CEO Bobby Watts ("Watts").

18. To Plaintiff's knowledge, no substantive action was taken in response to this report.

19. Freeman's abuse continued over the next two years.

20. During this time, Plaintiff's co-workers lodged various complaints against Freeman to management.

21. Plaintiff's co-workers alleged that Freeman used abusive language.

22. Plaintiff's co-workers alleged that Freeman exhibited erratic and inconsistent behavior.

23. Plaintiff's co-workers alleged that Freeman made sexual advances.

24. Freeman made a number of discriminatory comments to Plaintiff on the basis of sex and gender.

25. Freeman said to Plaintiff, "Are you sure you don't want a big manly chair?" in reference to her office chair.

26. Freeman created a turtle mascot for NHCHC's Trauma Informed Anti Racist Alliance and complained that it was "too masculine."

27. Freeman then asked her team to identify traits of the turtle as either masculine or feminine.

28. For instance, Freeman claimed that black glasses were "too masculine" and that eyelashes were "too feminine."

29. Freeman regularly made other gender-insensitive comments to Plaintiff and other members of her team.

30. On March 29, 2022, Plaintiff made a complaint regarding Freeman to managers Julia Dobbins and Courtney Pladsen.

31. On March 30, 2022, Plaintiff filed a grievance against Freeman with Watts.

32. Prior to this, Plaintiff believe that she and Watts had a good working relationship.

33. After coming out as transgender and reporting Freeman for discrimination, Watts's attitudes toward Plaintiff changed.

34. At approximately 6:00 PM on March 30, 2022, Plaintiff reported her grievance over a Zoom call to Watts, Pladsen, and Kelli Klein ("Klein").

35. When reporting the grievance on the teleconference, Plaintiff came out as a transgender woman.

36. On the teleconference, Plaintiff also asked for an advocate.

37. Watts denied Plaintiff's request for an advocate.

38. Plaintiff was asked if she wanted to go on administrative leave following the report.

39. Plaintiff did not want to go on administrative leave.

40. NHCHC forced Plaintiff to take administrative leave for two days.

41. Watts told Plaintiff that she was being placed on leave because NHCHC "did not know what to do" in light of Plaintiff's complaint.

42. Watts's attitude toward Plaintiff changed after he learned that Plaintiff was a transgender woman.

43. On April 4, 2022, Watts scheduled a meeting with Plaintiff and Harper for 8:00 AM that morning.

44. Before logging on to the teleconference meeting, Plaintiff saw that Freeman had joined the conference.

45. Plaintiff did not join the meeting and asked Watts and Harper why Freeman had joined.

46. Watts and Harper then informed Plaintiff that they would be investigating Freeman.

47. Watts told Plaintiff that he would tell Freeman about the investigation and that he would tell her that Plaintiff had made the complaint.

48. Freeman was allowed to continue to work for NHCHC.

49. After the investigation was complete neither Plaintiff's supervisor, CEO or Board President discussed their findings with Plaintiff.

50. Freeman was allowed to continuing working for a number of weeks during the investigation.

51. NHCHC allowed Freeman to resign on or about April 25, 2022.

52. After she resigned, NHCHC allowed her to continue to work for two more weeks.

## Watts Discrimination

53. NHCHC has the following policy regarding grievances:

    605D. Management Response

    After thorough review of all evidence available the Supervisor, CEO and/or the Board President must discuss their findings with the person filing the grievance within the written deadlines. A written report of all relevant discussions will be kept on file for future reference.

54. Neither Watts, nor anyone else from NHCHC discussed the findings of the investigation with Plaintiff.

55. Watts told Plaintiff that she was not allowed to discuss any aspect of the investigation with anyone.

56. On April 26, 2022, Plaintiff made multiple complaints to Watts regarding the investigation and how she had been treated.

57. On April 28, 2022, Bobby Watts said, "Prior to our Zoom call on March 30, I had not heard from you (Plaintiff) or anyone else of egregious behavior by Dott."

58. Watts did not address any of Plaintiff's concerns.

59. Watts continued to ignore Plaintiff's concerns and requests.

60. Plaintiff requested a time to discuss the Freeman situation with other employees.

61. NHCHC agreed to hold a meeting with a mediator and other employees to discuss the Freeman situation.

62. NHCHC did not schedule the meeting in a timely manner.

63. On May 1, 2022, Plaintiff wrote an email to all NHCHC employees expressing her concerns about unchecked discrimination and how Watts handled the investigation.

64. NHCHC determined that this letter was misconduct.

65. NHCHC then placed Plaintiff on administrative leave until May 20, 2022.

66. After placing Plaintiff on administrative leave, on May 5, 2022, NHCHC scheduled a meeting with staff and a mediator to discuss the Freeman allegations.

67. They held this meeting without Plaintiff since she was on administrative leave.

68. Freeman was still working for NHCHC when this meeting took place.

69. After this meeting, Watts determined that Freeman should not be allowed to continue to work for NHCHC.

70. When Plaintiff returned from leave, NHCHC indicated that further misconduct could result in termination.

71. NHCHC never told Plaintiff of any further misconduct.

72. Plaintiff did not engage in any further misconduct while working for NHCHC.

73. When Plaintiff returned on May 23, 2022, Watts requested a one-on-one meeting with Plaintiff.

74. Plaintiff asked for an advocate for meetings with Watts.

75. NHCHC claims it is a trauma informed organization.

76. Providing advocacy is a key element of trauma informed care.

77. Watts denied Plaintiff's request for an advocate for meetings.

78. On May 26, 2022, Watts and Darlene Jenkins hosted a staff meeting to discuss the grievance policies and procedures.

79. During the meeting, Darlene gave an example of an employee complaining that they did not feel safe and how that triggered an "automatic HR inquiry."

7

Plaintiff's First Set of Interrogatories

Case 3:23-cv-01380   Document 1   Filed 12/28/23   Page 7 of 13 PageID #: 7

80. During the meeting, Watts stated that "if you say something significant, the management or supervisor may be obligated to follow up."

81. On multiple occasions, Plaintiff stated that she felt unsafe around Watts.

82. On June 6, 2022, Plaintiff filed a grievance against Bobby Watts for his failures to follow protocol during the Freeman investigation.

83. In this grievance, Plaintiff also expressed that she felt unsafe around Watts.

84. Watts was known by employees to have a reputation for discrimination on the basis of sex.

85. Employees regularly had to correct Watts on pronoun usage.

86. Watts refused to participate in conferences on unhoused women.

87. Watts's attitude toward Plaintiff changed after Plaintiff came out as a transgender woman.

## Termination

88. In early October 2022, NHCHC hosted a leadership conference.

89. Plaintiff was tasked with setting up microphones and related equipment for Cindy Manginelli, Julia Dobbins, and Lily Catalano.

90. Plaintiff asked all three co-workers to meet with her to discuss their needs for the Conference.

91. Dobbins and Catalano met with Plaintiff and provided her the information she needed.

92. Manginelli did not respond to Plaintiff's requests and did not attend the meeting.

93. Dobbins and Catalano were both scheduled to present at 9:30.

94. Manginelli gave no indication that her setup would be any different.

95. Plaintiff ensured that all three presentations would be set up by 9:30.

96. At approximately 8:45 am on the morning of the conference, Harper calls Plaintiff to tell her that Manginelli was scheduled to start at 9:00 am.

97. Manginelli's set-up was not completed by 9:00 am because she had failed to provide Plaintiff with any information about her needs.

98. Manginelli regularly told co-workers that she was a Conservative Christian.

99. Manginelli expressed anti-trans sentiments in front of co-workers.

100. On October 18, 2022, NHCHC terminated Plaintiff.

101. Plaintiff was given no indication as to why she was being terminated.

102. NHCHC provided no evidence of any misconduct on the part of Plaintiff when they terminated her.

103. Following Plaintiff's termination on October 18, 2022, her job duties were assigned to John Soto, a straight, cisgender man.

104. Soto's title was later changed to Media and Technology Manager.

IV. Causes of Action

Count I - Violations of Title VII of the Civil Rights Act of 1964

Discrimination on the Basis of Transgender Identity

105. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs above with the same force and effect as if set out in specific detail herein below.

106. Plaintiff is a transgender woman and therefore a member of a protected class.

107. Plaintiff suffered an adverse employment action.

108. Plaintiff was terminated on October 18, 2022.

109. Plaintiff was qualified for the position.

110. Plaintiff consistently received positive evaluations of her performance.

111. Freeman discriminated against Plaintiff by questioning her "manliness" on multiple occasions.

112. Watts discriminated against Plaintiff by failing to conduct a proper investigation on Freeman.

113. Watts discriminated against Plaintiff by terminating her based on false pretext.

### Count II - Violations of Title VII of the Civil Rights Act of 1964

### Retaliation for reporting Freeman

114. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs above with the same force and effect as if set out in specific detail herein below.

115. Plaintiff engaged in protected activity when she reported Freeman for using discriminatory gendered language.

116. NHCHC retaliated against Plaintiff by placing her on administrative leave.

117. NHCHC retaliated against Plaintiff by terminating her employment despite no evidence of wrongdoing.

### Count II - Violations of Title VII of the Civil Rights Act of 1964

### Retaliation for reporting Watts

118. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs above with the same force and effect as if set out in specific detail herein below.

119. Plaintiff engaged in protected activity by filing a grievance against Watts for failing to follow proper investigation protocols.

120. Plaintiff engaged in protected activity by requesting an advocate for meetings with Watts.

121. Plaintiff engaged in protected activity by making multiple complaints that she did not feel safe around Watts because Watts treated her differently after she came out as a transgender woman.

122. Watts and Cindy Manginelli conspired to terminate Plaintiff based on false accusations of misconduct.

**Prayer for Relief**

WHEREFORE, the plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. The effect of the unlawful employment practices complained of herein has been to deprive the Plaintiff of equal employment opportunities and to otherwise adversely affect her status as an employee because of her gender. Such discrimination and/or retaliation practices were performed intentionally with malice and/or reckless indifference to the federally protected rights of Plaintiff.

2. Enter an Order requiring the defendant to make Plaintiff whole by awarding her:

    a. Reinstatement

    b. Loss of back wages;

    c. Loss of insurance benefits;

    d. Loss of other fringe benefits;

    e. Loss of Future earnings and front-pay;

    f. Loss of reputation;

g. Humiliation, embarrassment, and loss of self-esteem;

   h. Punitive damages; and

   i. Loss of time and money in endeavoring to protect her from Defendants' unlawful discrimination, including costs and reasonable attorneys' fee of this action.

3. Plaintiff has suffered damages as a result of Defendant's discriminatory actions in excess of $300,000.00.

4. Declaration that the Defendants violated Plaintiff's rights with regard to sex discrimination.

5. Compensatory damages with prejudgment and post judgment interest to Plaintiff for all salary, back pay, front pay, and benefits lost due to Defendants' unlawful actions in an amount not less than $300,000.00 or to be determined;

6. Liquidated damages;

7. Punitive damages to Plaintiff in an amount to be determined;

8. Award to Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees, costs, and expenses;

9. Plaintiff further prays for such other relief and benefits as the cause of justice may require as the Court deems just and proper; and

10. Jury trial with Cause to be tried by a jury of peers (12).

PLAINTIFF DEMANDS A TRIAL BY JURY.

Respectfully submitted,

/s/David Weatherman

David Weatherman BPR 029446
The Weatherman Firm
1242 Old Hillsboro Road
Franklin, TN 37069
615-779-6344
david@theweathermanfirm.com